IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-00072-RMR-NRN

GREGORY MORRIS SANDERS,

    Plaintiff,

v.

CORECIVIC, LLC, Prison-for-Profit, & or its Chairman, President, & Shareholders,
PAUL FLORES, Unit Manager, CORECIVIC, LLC, Employee,
ELISSA COLLINS, Correctional Counselor, CORECIVIC, LLC, Employee,
JUDY CAMPBELL, Hospital Services Administrator, R.N., CORECIVIC LLC employee, and
JOY PALOMINO, Lt. Housing Assignments Officer, CORECIVIC, LLC, Employee,

    Defendants.

---

**REPORT AND RECOMMENDATION ON
CORRECTIONAL HEALTH PARTNERS, LLC'S MOTION TO DISMISS PLAINTIFF'S
FIFTH AMENDED COMPLAINT (ECF No. 137) AND
CORECIVIC DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIFTH AMENDED
COMPLAINT (ECF No. 140)**

---

**N. REID NEUREITER**
**United States Magistrate Judge**

    This case is before the Court pursuant to orders issued by Judge Regina M. Rodriguez, ECF Nos. 138 & 141, referring Defendant Correctional Health Partners, LLC's ("CHP") Motion to Dismiss Plaintiff's Fifth Amended Complaint, ECF No. 137, and Defendants CoreCivic, LLC ("CoreCivic"), Paul Flores, Elissa Collins, Judy Campbell, and Joy Palomino's (collectively, "CoreCivic Defendants") Motion to Dismiss Plaintiff's Fifth Amended Complaint, ECF No. 140.

    Plaintiff Gregory Morris Sanders ("Plaintiff" or "Mr. Sanders") filed an opposition to the CoreCivic Defendants' Motion to Dismiss, ECF No. 148, and CoreCivic

Defendants filed a reply, ECF No. 157. The Court conducted a telephonic motion hearing on July 25, 2023. ECF No. 159. The Court has taken judicial notice of the Court's file, considered the applicable federal and state statutes and case law. As set forth below, the Court **RECOMMENDS** that

> (1) CHP's Motion to Dismiss, ECF No. 137, be **DENIED AS MOOT**; and
>
> (2) CoreCivic Defendants' Motion to Dismiss, ECF No. 140, be **GRANTED** with respect to the First, Eighth, and Fourteenth Amendment claims, and **DENIED** with respect to the ADA claim.

### I.   FACTUAL BACKGROUND

The Court begins by summarizing Mr. Sanders' allegations regarding his medical history, as alleged in the operative Fifth Amended Complaint ("FAC"), ECF No. 131. Mr. Sanders has a physical mobility impairment. FAC ¶ 3. Throughout the relevant time period, Mr. Sanders used a medically prescribed cane with four rubber-tipped feet, and was prescribed certain medications which caused him to experience side effects of lightheadedness, dizziness, confusion, imbalance, auditory and visual hallucinations, passing out, and blurred vision. *Id.* ¶¶ 3–4, 7. He also has a diagnosed history of vertigo, seizures, dizziness, COPD, degenerative disc disease, sciatica, neuropathy, and "ACL and MI discus injuries"; suffers from spastic paralysis in his hands and the toes of his left foot; and has two partially amputated fingers on his left hand. *Id.* ¶¶ 7, 24.

The events at issue in this case occurred in 2019 and 2020 at Crowley County Correctional Facility ("CCCF"), a facility operated by CoreCivic. Mr. Sanders was arrested on March 16, 2019, and held at Denver City and County Jail ("DCCJ") until May 1, 2019. *Id.* ¶¶ 1–2. Because of Mr. Sanders' impairments, he was "restricted . . .

2

from being assigned" to anything other than a bottom bunk bed on the bottom tier of the facility,[1] and he did receive such an assignment at DCCJ. *Id.* ¶ 3. From May 1, 2019 until October 30, 2019, Mr. Sanders was transferred back and forth eight times between DCCJ and CCCF. *Id.* At each transfer, he was assigned a bottom bunk on the bottom tier. *Id.*

However, on an October 30, 2019 transfer back to CCCF, Housing Assignment Officer Joy Palomino for the first time assigned Mr. Sanders a top bunk on the top tier. *Id.* ¶¶ 3, 6. That day, he twice asked Correctional Counselor Elissa Collins to be moved to a bottom bunk on the bottom tier due to his mobility restrictions. *Id.* ¶ 10. Ms. Collins responded that she would not move anyone until after January 1, 2020, and that Mr. Sanders should "work it out" with the inmates in the bottom bunks. *Id.* On November 13, 2019, a medical doctor at CCCF prescribed that Mr. Sanders be restricted to lower bunks on lower tiers. *Id.* ¶ 12. However, in December 2019, Ms. Collins repeatedly denied Mr. Sanders' continued requests to be moved to a bottom bunk and bottom tier, and allegedly threatened to put Mr. Sanders in the hole due to his repeated requests.[2] *Id.* ¶¶ 13–17. Unit Manager Paul Flores, Ms. Collins' supervisor, told Mr. Sanders he would look into the matter, but never followed up. *Id.* ¶¶ 16, 38. Mr. Sanders also repeatedly sent kites to Hospital Services Administrator Judy Campbell, requesting to be moved. *Id.* ¶ 18. Mr. Sanders' top tier shelter assignment at CCCF was only

---

[1] Mr. Sanders alleges that this restriction was documented in the "Medical Housing Restriction Log," which is presumably a document maintained by DCCJ and/or CCCF. *Id.* ¶ 6.

[2] Ms. Collins was allegedly retaliating against Mr. Sanders because earlier that year he had accused her of being involved in "illicit conduct while on prison property," and she had allegedly told another inmate, "he . . . *expletive* in my cereal so I'm *expletive* in his" in reference to Mr. Sanders. *Id.* ¶ 36.

accessible via a staircase of 16 metal-grated stairs. *Id.* ¶ 5. As a result, Mr. Sanders' cane would from time to time become lodged in the metal grating. *Id.*

Mr. Sanders continued to reside on the top bunk and top tier until January 5, 2020, when his cane became stuck and he fell down the staircase onto a concrete floor, suffering injuries. *Id.* ¶ 22. Mr. Sanders was then transferred back to DCCJ on January 7, 2020, where he was assigned a bottom bunk on the bottom tier. *Id.* ¶ 5. On January 27, 2020, he was again transferred to CCCF and assigned a top bunk on the top tier. *Id.* Mr. Sanders alleges that he has "not been on any day hall's staircases since" the fall, and has been diagnosed with PTSD-related anxiety due to a fear of stairs. *Id.* ¶ 8.

Mr. Sanders also alleges that Ms. Campbell failed to provide him with an "Offender Care Assistant" to help him carry things and navigate the stairs. *Id.* ¶ 24.

## II.   PROCEDURAL HISTORY

Mr. Sanders, proceeding pro se, filed the original complaint on January 10, 2022. After allowing three amendments to the original complaint, on October 25, 2023, this Court recommended that Mr. Sanders' Third Amended Complaint, ECF No. 61, be dismissed, and that Mr. Sanders be granted leave to amend his complaint "in order to file one single document laying out each and every relevant factual allegation that Plaintiff wants the Court to consider, including facts that may be relevant to his claim that the statute of limitations should be equitably tolled." ECF No. 119 at 19. On November 20, 2023, Judge Regina M. Rodriguez affirmed the October 25, 2023 Recommendation. ECF No. 126. The Third Amended Complaint named as defendants the CoreCivic Defendants and CHP, ECF No. 61, whereas the now operative Fifth

4

Amended Complaint ("FAC"), filed on January 19, 2024, names only the CoreCivic Defendants. ECF No. 131.

The Court liberally construes FAC as asserting claims for (1) Defendants Flores, Collins, Campbell, and Palomino's deliberate indifference in violation of the Eighth Amendment, (2) CoreCivic's violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12132 (the "ADA Title II"),[3] (3) CoreCivic's violation of the Fourteenth Amendment Equal Protection Clause,[4] and (3) Defendant Collins and Flores' retaliation against Mr. Sanders in violation of the First Amendment right to free speech.[5]

### III. CHP MOTION TO DISMISS (ECF No. 137)

The FAC does not name CHP as a defendant, nor does it allege that any named defendants are employed by CHP. Accordingly, upon filing of the FAC, CHP was no longer a party in this lawsuit. Accordingly, the Court recommends that CHP's Motion to Dismiss, ECF No. 137, be denied as moot.

---

[3] The Court liberally construes Mr. Sanders' pro se FAC as asserting a claim under the ADA. See FAC ¶¶ 31 ("Claim Two: Equal Protection Rights Violations, based on discrimination toward an American citizen who is disabled, in violation of the Administrative Regulation ("AR") 750-05-ADA Access, and the United States Constitution."); 26 ("But for the Defendants' disregard of medical-prescription I would not have been deprived of the protections afforded by the medical prescription, AR 750-04 ADA Access, and the Eighth Amendment to our Constitution.").

[4] The Court also liberally construes the FAC's reference to an "Equal Protection Rights Violation" as asserting a claim under the Fourteenth Amendment. Id. ¶ 31.

[5] The FAC states that "Claim Four" is for "equitable tolling for extraordinary circumstances." However, equitable tolling is an affirmative defense and not a claim for legal relief.

IV.   STANDARD FOR DISMISSAL

    A. Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). "A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679–81. Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679. To obtain dismissal at the Rule 12(b)(6) stage based on the statute of limitations, the allegations on the face

6

of the complaint surrounding the date of accrual must "make clear that the right sued upon has been extinguished." *Sierra Club*, 816 F.3d at 671 (quotation marks omitted).

### B. Pro Se Plaintiff

The Court must construe the FAC and other papers filed by Mr. Sanders liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Hall*, 935 F.2d at 1110. However, the Court should not be an advocate for a pro se litigant. *See Hall*, 935 F.2d at 1110.

## V. CORECIVIC MOTION TO DISMISS (ECF No. 140)

CoreCivic Defendants argue that the FAC should be dismissed pursuant to Rule 12(b)(6) because (1) all claims are barred by the statute of limitations, and equitable tolling is not appropriate; (2) the Eighth Amendment claim does not adequately allege personal participation or deliberate indifference; (3) the First Amendment retaliation claims is not adequately pled; and (5) the entity liability of CoreCivic is not adequately pled pursuant to *Monell*.

### A. Statute of Limitations

This Court's October 25, 2023 Recommendation, ECF No. 119, accepted and adopted in a November 11, 2023 Order by Judge Rodriguez, ECF No. 126, sets out the framework for the applicable statutes of limitations and accrual dates in this case. To briefly reiterate, the applicable statute of limitations for all of Mr. Sanders' claims is two years. *See* Colo. Rev. Stat. § 13-80-102; *Riel v. Reed*, 760 F. Supp. 852, 855 (D. Colo. 1991). However, the accrual date—the date the statute of limitations begins to run—differs. For the constitutional claims, the accrual date was the date "when the plaintiff knows or should know that his or her constitutional rights have been violated." *Smith v.*

7

*City of Enid By & Through Enid City Comm'n*, 149 F.3d 1151, 1154 (10th Cir. 1998). Accordingly, the accrual date for the constitutional claims was, at the latest, January 5, 2020—the date of Mr. Sanders' fall. Because Mr. Sanders did not file the initial complaint until January 10, 2022, the statute of limitations bars Mr. Sanders' constitutional claims unless the applicable limitations period has been tolled.

However, the accrual date of Mr. Sanders' ADA claim differs because "a public entity violates Title II of the [ADA] . . . each day that it fails to remedy a noncompliant service, program, or activity." *Hamer v. City of Trinidad*, 924 F.3d 1093, 1097 (10th Cir. 2019).

> As a result, the applicable statute of limitations does not operate in its usual capacity as a firm bar to an untimely lawsuit. Instead, it constrains a plaintiff's right to relief to injuries sustained during the limitations period counting backwards from the day he or she files the lawsuit and injuries sustained while the lawsuit is pending.

*Id.* Accordingly, an ADA claim would accrue anew each day that a noncompliant practice or condition remains unaddressed.

CoreCivic Defendants argue that Mr. Sanders "complains of no specific act or omission by the CoreCivic Defendants occurring after January 5, 2020." ECF No. 140 at 4. The Court disagrees. The FAC alleges that after his fall on January 5, 2020, Mr. Sanders was transferred back to DCCJ two days later, and then on January 27, 2020, was transferred back to CCCF and again assigned a top bunk on a top tier—allegedly after numerous complaints and a CCCF doctor's order that he be assigned to bottom bunks on bottom tiers. The FAC therefore alleges that CoreCivic Defendants assigned Mr. Sanders to shelter where it was unsafe and not accessible to him due to his physical impairments.

8

The Court therefore finds that, based on the FAC's allegations, Mr. Sanders' ADA claim accrued on January 27, 2020 when he was assigned a top bunk on the top tier, and his relevant injuries for the purposes of an ADA claim would be those injuries suffered from January 10, 2020 (two years before the lawsuit was filed) until January 10, 2022 (the date he filed suit). The ADA claim is therefore not barred by the statute of limitations. Because CoreCivic Defendants do not make any other arguments regarding dismissal of Mr. Sanders' ADA claim, the Court recommends that it should not be dismissed.

### B. Equitable Tolling

The Court next considers whether Mr. Sanders' constitutional claims—which are otherwise barred by the statute of limitations—may be revived due to equitable tolling. As previously iterated in this Court's October 25, 2023 Recommendation, ECF No. 119, state law governs whether the statute of limitations on Mr. Sanders' constitutional claims is equitably tolled. *See Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006). The Colorado Supreme Court has held that equitable tolling is generally disfavored, but may apply if the defendant's wrongful conduct prevented the plaintiff's timely filing, or "'where extraordinary circumstances make it impossible for the plaintiff to file his or her claims within the statutory period.'" *Nolan v. Haley*, No. 21-cv-02424-PAB-MDB, 2023 WL 2401065, at *4 (D. Colo. Mar. 8, 2023) (quoting *Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094, 1096-97 (Colo. 1996)), *reconsideration denied*, No. 21-cv-02424-PAB-MDB, 2023 WL 3321387 (D. Colo. May 9, 2023), *and appeal dismissed*, No. 23-1098, 2023 WL 10555160 (10th Cir. Dec. 12, 2023). The Colorado Supreme Court has found "extraordinary circumstances" on extremely rare occasions such as court closures

during the Civil War and a plaintiff's internment in Japan during World War II. *See Dean Witter Reynolds*, 911 P.2d at 1097. Under the "extraordinary circumstances" theory, a plaintiff must also allege with specificity the steps that he took to diligently pursue his claims following the exhaustion of his administrative remedies. *See Yang v. Archuleta*, 525 F.3d 925, 930 (10th Cir. 2008); *Pinson v. Pacheco*, No. 10-cv-01377-REB-MJW, 2011 WL 1755888, at *4 (D. Colo. Mar. 16, 2011). It is a plaintiff's burden to establish a factual foundation showing that the statute of limitations should be equitably tolled. *See Graham v. Teller Cnty., Colo.*, 632 F. App'x 461, 463 (10th Cir. 2015).

The FAC alleges a litany of events that delayed Mr. Sanders' ability to file this lawsuit, and the Court must presume that all factual, non-conclusory allegations are true for purposes of the motion to dismiss. *Hall*, 935 F.2d at 1109. Mr. Sanders alleges that he prepared his initial complaint from June 2020 (five months after the fall) through May 2021. FAC ¶ 40. On May 26, 2021, prior to being transferred from CCCF to a new facility Mr. Sanders refers to as CCF,[6] Mr. Sanders asked CCCF law library legal assistant T. Harrison to burn his work to a CD for transport, but she failed to do so. *Id.* Mr. Sanders was transferred to CCF, which does not have a law library, on or about May 28, 2021. He then sent a kite to Y. Brown, a legal assistant at Fremont Correctional Facility ("FCF") (another facility), asking for his files from CCCF. *Id.* Ms. Brown told Mr. Sanders to contact CCCF directly; he then asked her to make an exception, and she refused. *Id.* Mr. Sanders was transferred to FCF on June 1, 2021, and contacted Y. Brown on June 2 and 3, 2021 again requesting the documents. *Id.* Ms. Brown again instructed Mr. Sanders to contact CCCF directly. *Id.* Mr. Sanders then contacted T.

---

[6] The Court presumes that this may refer to Centennial Correctional Facility.

Harrison repeatedly from June 7 through 21, 2021 regarding the documents, but never received them. *Id.* Mr. Sanders alleges that he continued to work on his complaint from June through October 22, 2021, when Y. Brown allegedly removed Mr. Sanders' work product from the computer system. *Id.* Despite his repeated requests, she did not return the work product until December 14, 2021. *Id.* Mr. Sanders was also quarantined from early November through mid-December 2021 due to his roommate contracting COVID-19. *Id.* Mr. Sanders alleges Y. Brown's actions caused him to have to handwrite nearly 100 paragraphs of his original complaint, which he was unable to complete until January 10, 2022, more than two years after he fell on the staircase. *Id.*

Mr. Sanders also asserts that a separate ongoing state case and federal case "did not interfere with [his] preparations in this action." *Id.* During the relevant time period, Mr. Sanders was involved in criminal proceedings in Denver County District Court (*Colorado v. Sanders*, 2019CR002075), and federal proceedings in this district and the Tenth Circuit (*Sanders v. Werner*, 19-cv-01736-KLM (D. Colo.); and *Sanders v. Werner*, No. 21-1096 (10th Cir.)). *See* ECF Nos. 140-1 through 140-3.[7] Based upon these court records, from the time of his fall on January 5, 2020 until the day he filed the initial complaint in this case on January 10, 2022, Mr. Sanders appears to have made more than twenty filings across these different matters.

The Court first evaluates whether Mr. Sanders has adequately alleged that a *defendant's* wrongful conduct prevented him from timely asserting his claims. Ms.

---

[7] When considering a motion to dismiss, the Court may take judicial notice of another court's publicly filed records "concerning matters that bear directly upon the disposition of the case at hand." *Hodgson v. Farmington City*, 675 F. App'x 838, 841 (10th Cir. 2017) (internal citation and quotation marks omitted).

11

Brown, FCF, and CCF are not defendants in this case, so any alleged wrongful conduct on their part is not material to this part of the analysis. Ms. Harrison, while not herself a named defendant, is alleged to have been an employee of Defendant CoreCivic. But Ms. Harrison's alleged actions—refusing to provide Mr. Sanders' legal paperwork and draft complaint—did not *prevent* Mr. Sanders from filing a timely complaint. Mr. Sanders still had the ability to make legal filings, as evidenced by his other active court cases.

For the same reason, the Court finds that Mr. Sanders has not alleged that extraordinary circumstances prevented him from timely filing his complaint. Although Mr. Sanders has alleged that he was denied access to some of his previous writing and work product, he has not alleged a "complete confiscation" of his legal materials, sufficient to justify the application of equitable tolling. *See United States v. Gabaldon*, 522 F.3d 1121, 1123 (10th Cir. 2008)

The Court finds that equitable tolling does not apply to Mr. Sanders' constitutional claims, and therefore recommends that they should be dismissed.

## VI. CONCLUSION

For the reasons set forth above, it is hereby **RECOMMENDED** that

(1) CHP's Motion to Dismiss, ECF No. 137, be **DENIED AS MOOT**; and

(2) CoreCivic Defendants' Motion to Dismiss, ECF No. 140, be **GRANTED** with respect to the First, Eighth, and Fourteenth Amendment claims, and **DENIED** with respect to the ADA claim.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve**

**and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge,** *Thomas v. Arn*, **474 U.S. 140, 148–53 (1985), and also waives appellate review of both factual and legal questions.** *Makin v. Colo. Dep't of Corr.*, **183 F.3d 1205, 1210 (10th Cir. 1999);** *Talley v. Hesse*, **91 F.3d 1411, 1412–13 (10th Cir. 1996).**

Dated at Denver, Colorado this 9th day of August, 2024

_____
N. Reid Neureiter
United States Magistrate Judge